Inman-Poulsen Lumber Co., an Oregon corporation, v. Commissioner.
Inman-Poulsen Lumber Co. v. Commissioner
Docket No. 29212.
United States Tax Court
1953 Tax Ct. Memo LEXIS 350; 12 T.C.M. (CCH) 193; T.C.M. (RIA) 53066; February 27, 1953
*350 Ralph R. Bailey, Esq., 723 Pittock Block, Portland, Ore., for the petitioner. Douglas R. Barnes, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency of $11,900.17 in petitioner's income tax for the year 1944. The sole issue is whether petitioner is entitled to a bad debt deduction of $47,368.76 in determining its 1944 income tax liability. Other adjustments were made in the deficiency notice, but they are not now in issue. Findings of Fact Some of the facts were stipulated and are so found. Petitioner, an Oregon corporation with its principal office at Portland, Oregon, filed its 1944 income tax return with the collector of internal revenue for the district of Oregon. Petitioner was in the lumber manufacturing business and was organized in 1904. During the years between 1929 and 1944, petitioner made advances in regular amounts to eight or more of its stockholders. These advances were made without the official authority or sanction of the stockholders or directors, and they were paid under the responsibility of the president of petitioner. At the beginning of 1944 the advances *351 aggregated $287,475.58, and of the total amount some $81,803.76 was paid to Clara Inman deBruin in the form of cash, merchandise, donations in her behalf, salary and other items. Clara Inman deBruin was the widow of one of the founders of petitioner, David R. Inman. As a result of his death in 1930 she inherited 300 shares of petitioner's common stock. In the beginning of 1943 she still had 300 of the 1,686 total outstanding shares of petitioner. In 1943 Clara Inman deBruin sold 11 shares of petitioner's stock for $250 per share, or an aggregate of $2,750. In the following year, in April, she again sold 10 more shares for a total of $2,500. In July, 1944, she sold 218 shares for a total of $54,500. She spent this $54,500 as follows: $34,435 was paid to petitioner for the account of Clara Inman deBruin; $20,065 was paid to redeem her personal home after a foreclosure sale. One additional share was disposed of as a gift. The remaining 60 shares were distributed after her death in 1947 in accordance with her will. In 1940 when petitioner was in a precarious financial condition certain minority stockholders became concerned over the fact that no attempt had been made to collect these *352 advances which had been paid to some of the stockholders over the prior 10 years. As a result of the minority stockholders' activities, most of the stockholders who had received advances over the prior years signed statements as follows: "Inman-Poulsen Lumber Co., "Portland, Oregon. "Gentlemen: "From time to time in past years you have advanced to me and I have received from you sums aggregating at the present time $ , which aggregate amount is over and above certain payments and credits made on the account, but does not include any interest. These advances were made to and received by me with the understanding that all dividends and distributions to which I might be entitled as a stockholder of Inman-Poulsen Lumber Co. should be applied against this account until it had been paid in full. It was understood and agreed that the amounts so advanced should be repaid only as above indicated and should not constitute a personal indebtedness. Advances were made to various other stockholders of Inman-Poulsen Lumber Co. under a similar understanding and agreement following a long-established practice of the Company. "I confirm by this letter the foregoing understanding and agreement, *353 and in order to accomplish same I hereby assign unto Inman-Poulsen Lumber Co. all dividends and distributions whatsoever, which may be made on or with respect to shares of the capital stock now owned by me, until the payment in full of said sum of $ , together with interest thereon at the rate of three per cent per annum from and after January 1, 1940. This assignment covers all dividends or distributions hereafter made, regardless of time and whether made out of capital, and whether made currently or upon dissolution. "To make effective this assignment I agree that certificates representing shares of stock shall be endorsed with a notation or memorandum over the signature of the secretary of Inman-Poulsen Lumber Co. as follows: "All dividends and distributions whenever made on the stock represented by this certificate are assigned to Inman-Poulsen Lumber Co. under the terms of a letter from dated May , 1941, on file with the secretary of the Company." "Very truly yours," This letter was also filled in and executed by Clara Inman deBruin on December 15, 1941. In the early part of 1940 the advances made to Clara Inman deBruin were stopped and she was paid what was designated *354 a salary $100of per month until the early part of 1942. In January 1942 petitioner consummated a large loan with the Reconstruction Finance Corporation. One of the conditions in the loan agreement was that the petitioner would not declare any dividend or other distribution to stockholders during the period that any part of the principal or interest on the loan remained unpaid. At a special meeting of petitioner's board of directors on June 27, 1944, a motion was made, seconded and carried, wherein petitioner agreed to accept the sum of $34,435 in full payment and satisfaction of the aggregate amount charged to the account of Clara Inman deBruin on the records of petitioner. Petitioner on its 1944 income tax return claimed a bad debt deduction of $47,368.76. This amount represents the difference between the balance in the Clara Inman deBruin account on December 31, 1943, of $81,803.76 and the cash received by petitioner in July 1944 in the amount of $34,435. Respondent in the deficiency notice disallowed the $47,368.76 as a bad debt deduction in 1944. Clara Inman deBruin held valuable assets during the year 1944; she owned stock in the petitioner corporation in the value of *355 $15,000, and an excess of $20,000 in cash which was paid on her home. The balance in her account on petitioner's books at the end of 1944 did not represent a deductible bad debt of the petitioner. Opinion Petitioner contends that Clara Inman deBruin was a bona fide business debtor in 1944 with an indebtedness to petitioner in the amount of $81,803.76. For this reason, under section 23 (k) (1), I.R.C., petitioner contends it could claim a bad debt deduction in the year the debt became worthless in whole or in part, and that some $47,368.76 was worthless in 1944. On the other hand, respondent contends that petitioner is not entitled to a bad debt deduction because the debt, if it existed, was not worthless, or because the advances represented dividends. Section 23 (k) (1) provides that debts which became worthless within the taxable year may be deducted from gross income, or that when a debt is recoverable only in part, such debt, in an amount not in excess of the part charged off within the taxable year, may be allowed as a deduction. The test under this section is the actual worthlessness of the debt in whole or in part. It appears from the record that *356 the advances, on the cancellation of the alleged debt, were more in the nature of gifts rather than bona fide debts. Clara Inman deBruin was the widow of one of petitioner's founders and for this reason the money was given to her out of sentiment rather than for business purposes. Arguendo, even if we assume that there was a valid debt, we can not find that the debt was worthless in 1944, the year the bad debt deduction was claimed. The facts are that petitioner deducted $47,368.76, which represents prior payments to Clara Inman deBruin, as a worthless debt. In that same year, 1944, Clara Inman deBruin held valuable assets which could have been used to offset this alleged indebtedness. She still retained 60 shares of her 300 shares of petitioner's stock; 239 shares had recently been sold for $250 a share. In 1944 she also owned her home which had been redeemed for $20,055 after a foreclosure sale. We are unwilling to hold that a debt is worthless if the debtor has the capacity to pay, and there is no bar or impediment which prohibits the creditor from collecting. And especially this is so where the creditor has not proved, as here, that it has exhausted all possibility of obtaining *357 reimbursement. Allen-Bradley Co. v. Commissioner, 112 Fed. (2d) 333, 335; affirming a Memorandum Opinion of this Court, decided May 8, 1939; A. Finkenberg's Sons, Inc., 17 T.C. 973, 984. See also George F. Thompson, 6 T.C. 285; affd. 161 Fed. (2d) 185. Other than petitioner's claim against Clara Inman deBruin, the record does not indicate any other liabilities which would have preference over her assets. We think the situation here is similar to that in Fitzgerald v. Commissioner, 154 Fed. (2d) 1017; affirming a Memorandum Opinion of this Court decided June 22, 1945, where because of the relationship of the parties the creditor did not take the legal step to enforce his right. Therefore, on these facts, we are constrained to uphold respondent's disallowance of the entire amount. There has been no evidence which would justify a partial allowance of the amount claimed. Decision will be entered for the respondent.